## IN THE U.S. DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| ANne ORTEGON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER: |
| ) | |
| ) | _____ |
| ) | |
| MIDLAND FUNDING LLC, AND ) | JURY TRIAL REQUESTED |
| MIDLAND CREDIT ) | |
| MANAGEMENT, INC. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Anne Ortegon ("Ortegon") files this complaint against Midland Funding, LLC ("Midland") and Midland Credit Management ("MCM") (collectively, "Defendants") for violation of the Fair Debt Collection Practices Act and state law.  In support thereof, Ortegon alleges as follows:

### NATURE OF THE CLAIM

Midland and MCM are debt buyers, purchasing information about allegedly "charged-off accounts" from various financial institutions for pennies (or less) and then filing mass lawsuits based on that information.  The Defendants perform no due diligence to determine whether the underlying debts are valid or enforceable before filing suit and have no intent to prove their claims at trial.  Instead, the

Defendants file these suits with the intent of extracting settlements out of the consumers regardless of whether the claims are valid or not.

Pursuant to this strategy, Midland filed a collection suit against Ortegon on May 27, 2014. The complaint purported to be collecting on a debt on a HSBC Bank credit card. Among other deficiencies, the Defendants' claim was time-barred. The Defendants also had no intent to prosecute the claim. On September 17, 2014, trial was had on Midland's suit. When Ortegon's counsel appeared for trial, Midland conceded that it did not have evidence to support its claim and judgment was entered for Ortegon. Midland did not appeal.

The Defendants' frivolous collection suits against Ortegon, on a time-barred claim, without evidence of the debt, and with knowledge that they will make no effort to procure that evidence, violates the Fair Debt Collection Practices Act and state law.

## THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Ortegon is a natural person residing in St. Clair County, Alabama.

2. Defendant Midland Funding LLC ("Midland") is a Delaware limited liability company with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, California 92123.

3. Defendant MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, California 92123.

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because it arises under a federal statute, 15 U.S.C. §1692k. The Court has supplemental jurisdiction over Ortegon's state law claims pursuant to 28 U.S.C. §1367(a).

5. This Court has personal jurisdiction over the Midland Defendants because (1) the events that are the basis of this lawsuit occurred in Alabama and because (2) the Defendants regularly conduct business in the state of Alabama.

6. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

7. Ortegon is a "consumer" within the meaning of that term under 15 U.S.C. §1692a(3).

8. Midland Funding is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6). Midland is engaged in the business of collecting debts incurred, or alleged to be incurred, for personal, family or household purposes.

9. MCM is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6). MCM is engaged in the business of collecting debts incurred, or alleged to be incurred, for personal, family or household purposes.

10. Midland Funding and MCM work as a joint venture in the collection of debts. Midland Funding, which has no employees of its own, purchases "charged off" consumer credit card accounts from original creditors at deep discounts to face value. MCM's employees then supervise the collection of those debts as the agents and representatives of Midland Funding.

11. On information and belief, the Defendants do not actually purchase and receive account information which would support the "debts" that they claim to purchase and collect, such as a signed credit application or a cardmember agreement for the account in question. Instead, the Defendants typically receive little more than a spreadsheet listing the names, addresses, and amounts that the seller of information claims it is owed, and possibly copies of a few months of credit card statements allegedly sent to MCM.

12. The Defendants do not perform due diligence on the "debts" that Midland purports to buy to determine whether the seller actually owns the debts in question, whether the debts are still owed, and/or whether debts are enforceable.

13. The Defendants know there is a high probability that many of the "debts" that they purchase are not valid and/or are unenforceable. The Defendants

are aware that they lack sufficient information and documentation to determine the validity and enforceability of the "debts" that it purports to purchase.

14. On information and belief, the Defendants consciously and deliberately avoid performing due diligence on the "debts" that they purport to be buying to confirm their validity. They avoid performing due diligence because such efforts would cost time and money, they know that if they performed due diligence on those "debts" then they would affirmatively learn that a large percentage of the "debts" that they purchased are invalid or unenforceable, and they know that, if Midland simply files suit on those alleged "debts" without confirming the validity of the claim, then many consumers, who are typically poor or underprivileged, will be too scared to fight the Defendants' attorneys and will simply agree to pay Midland's invalid claims.

15. Midland typically files hundreds of purported collection lawsuits in Alabama on a monthly basis.

16. In the month of June 2014, for example, Midland filed approximately seven hundred and forty-seven (747) collection suits in the state of Alabama. Midland files similar numbers of lawsuits every month.

17 When Midland files suit, the Defendants know that they lack sufficient information and evidence to prove their claims in an Alabama court, that

they will not be able to procure such evidence, and that they have no intent to do so.

18. Instead, the Defendants calculate that many of the consumers will simply pay Midland off in order to settle the lawsuit, regardless of whether the underlying debt is valid and/or owed.

19. When a consumer who has been sued by the Defendants obtains legal representation, the Defendants typically agree to either dismiss the case against that consumer outright or stipulate to a judgment in favor of the consumer. That is because their attorneys have not conducted a meaningful review of the facts underlying the suit before filing and the Defendants know they cannot prove their claim against the consumer in an Alabama court.

20. Pursuant to this strategy, Midland filed suit against Ortegon in the small claims court in St. Clair County, Alabama for the alleged debt on or about May 27, 2014.

21. Among other deficiencies, Midland's complaint was time-barred. The account in question was open-ended and the last charge or payment made on the account was on or before June of 2010, outside Alabama's three-year statute of limitations for unpaid credit accounts. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1257 (11th Cir. 2014); *Mobile Rug & Shade Co. v. Daniel*, 424 So.2d 1332, (Ala. Civ. App. 1983).

22. Upon information and belief, the Defendants and/or their agents performed no meaningful attorney review of Midland's claims to determine their enforceability before filing suit against Ortegon.

23. Upon information and belief, the Defendants knew that they lacked evidence to secure a judgment against Ortegon at the time they filed suit against her, knew they would not be able to procure such evidence, and had no intent to prove their debt collection suit against Ortegon at the time they filed Midland's suit against her.

24. On September 17, 2014, Ortegon's counsel appeared for the trial.

25. At that time, the Defendants made no attempt to prove their claim. Instead, Midland's counsel informed the court that it had no witnesses and agreed that judgment should be entered in favor of Ortegon.

26. Midland did not appeal this judgment.

27. Ortegon has been damaged as a result of the Defendants' wrongful acts and omissions described above. Those damages include, but are not limited to, the invasion and interference with Ortegon's right to be free from abusive debt collection practices, causing Ortegon anger, anxiety, fear, and other mental anguish, and various costs and expenses incurred as a result of or in response to the Defendants' wrongful acts, including costs she incurred to hire an attorney to defend her against the Defendants' claims.

28. At all times pertinent to the allegations of this Complaint, the Defendants acted by and through their duly authorized agents, employers, servants attorneys, or other legal representatives, all of whom acted within the line and scope of such agency, employment, service, or representative capacity. Alternatively, the Defendants adopted, affirmed, and /or ratified the acts or omissions of their agents, servants, employees, attorneys, or legal representatives as its own with regard to the allegations of this complaint.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §1692 *ET SEQ*.

29. The Defendants used false, deceptive, and misleading representations in an attempt to collect purported debts from Ortegon. Those misrepresentations include, but are not limited to: (1) misrepresenting the amount allegedly due on the account, (2) filing suit on a time-barred debt, (3) misrepresenting that Midland intended to pursue legal action against Ortegon, (4) misrepresenting that Midland had or could obtain evidence that Ortegon owed the debt, and/or (5) that an attorney had meaningfully reviewed the evidence and information regarding Ortegon and determined that there was likely to be evidentiary support for the allegations against her.

8

30. The Defendants have a pattern and practice of filing such suits, with no intention of proving their claims, based on their knowledge and belief that the majority of people they sue will simply settle the claims, regardless of their merit, or will default. The Defendants' suit against Ortegon are pursuant to this pattern and practice.

31. The Defendants' conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692e.

32. The Defendants used unfair and/or unconscionable means in an attempt to collect the alleged debt from Ortegon. The Defendants' unfair and/or unconscionable means include, but are not limited to: (1) filing suit against Ortegon in an attempt to extort a payment from her; (2) filing suit on a claim that it knew it had no intent to prove at trial; and/or (3) filing suit against Ortegon without conducting a meaningful attorney review of the basis for that lawsuit and/or whether there was likely to be evidence to support the allegations against her.

33. The Defendants have a pattern and practice of filing such suits, with no intention of proving its claims, based on its knowledge and belief that the majority of people it sues will simply settle its claims, regardless of their merit, or will default. The Defendants' suit against Ortegon were pursuant to this pattern and practice.

34. The Defendants' conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692f.

35. The Defendants' violations detailed above were done intentionally and with knowledge.

36. As a result of the Defendants' violations of the FDCPA, Ortegon has been damaged. Ortegon is entitled to statutory damages, actual damages, and all costs and reasonable attorney's fee pursuant to the relevant provisions of the FDCPA.

## SECOND CAUSE OF ACTION
## MALICIOUS PROSECUTION

37. The Defendants filed their claim against Ortegon for breach of contract and account stated without probable cause.

38. The Defendants filed their claims willfully, wantonly, and out of malice. They knew that they were without evidence to support its claims, that they had no intention of procuring such evidence, and that they would not be able to procure such evidence if the case went to trial. Instead, they intended to use the threat of legal action to extort payments from Ortegon.

39. Judgment was entered for Ortegon and against Midland.

40. Ortegon suffered damages as a result of the Defendants' actions, including, but not limited to, out-of-pocket costs, mental anguish, anger, anxiety, fear, and lost work time.

## THIRD CAUSE OF ACTION

## WANTONNESS

41. The Defendants owe a duty to Ortegon to avoid committing wrongful and/or illegal acts that they know will likely or probably result in injury to her, and/or to fail to act with knowledge that someone is probably imperiled by their inaction.

42. Among other things, the Defendants breached that duty by: (1) initiating collection activity against Ortegon for amounts that were not due and/or could not legally be collected, (2) filing suit against Ortegon without any intent or means to prove its allegations, and/or (3) making false statements about Ortegon and/or harassing her into paying a debt that she does not owe.

43. The Defendants acted knowingly, intentionally, willfully, maliciously, and/or wantonly, in breaching their duties to Ortegon. The Defendants' policy is to initiate collection activities without knowledge to support their claims and to consciously avoid obtaining such knowledge because it would reveal that many of the "accounts" that they had allegedly purchased were not owed. The Defendants initiated their lawsuit against Ortegon pursuant to this policy.

44. As a proximate result of the Defendants' wantonness, Ortegon has suffered injuries and damages. Ortegon's damages include, but are not limited to, the lost time and expense of responding to Midland, appearing for trial, and various incidental costs. Ortegon also suffered anxiety, fear, humiliation, emotional distress, and mental anguish as a result of the Defendants' conduct.

45. Ortegon's damages were foreseeable to the Defendants. The Defendants knew that filing suit against Ortegon would likely result in harm, including mental distress, to Ortegon.

WHEREFORE, Ortegon demands judgment against the Defendants awarding the following relief:

A. Actual, compensatory and consequential damages, including mental anguish damages, in such an amount as the trier of fact determines;

B. Statutory damages pursuant to 15 U.S.C. §1692 *et seq.*;

C. Punitive damages in such amount as the trier of fact determines;

D. Such interest as allowed by law;

E. The costs of this suit, including plaintiff's reasonable attorney's fee; and,

F. Such additional relief as the Court deems just and equitable.

> Respectfully submitted,
>
> */s/ James Seal*
> One of the Attorneys for Plaintiff,
> Anne Ortegon

**OF COUNSEL:**

James Seal
SEAL HANSON LLC
2118 First Avenue North
Birmingham, Alabama 35203
Telephone:  205-776-2755

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY FOR ALL CLAIMS SO TRIABLE.

*/s/ James Seal*
One of the Attorneys for Plaintiff,
Anne Ortegon